UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 99-40041

_____

PAUL M. DUTHU; LEE ROY DUTHU; REX DUTHU;
HERMAN DUTHU; RUBY M. DUTHU,

Plaintiffs-Appellants,

VERSUS

RUBEN PENA, ETC., ET AL.,

Defendants,

RUBEN PENA, Individually and as Co-Executor and
Co-Trustee of the McGarr Estate and Trust, and as
Member of the Law Firm of Jones, Galligan, Key & Pena,
and as Member of the Law Firm of King & Pena; FOREST L.
JONES, Individually and as Member of the Law Firm of Jones,
Galligan, Key & Pena; ROBERT L. GALLIGAN, Individually and
as Member of the Law Firm of Jones, Galligan, Key and Pena;
HARLINGEN NATIONAL BANK, In Its Corporate Capacity and as
Successor in Interest to Town and Country National Bank;
TERRY D. KEY; JONES, GALLIGAN, KEY & LOZANO, LLP,

Defendants-Appellees.

--------------------------------------------------

_____

No. 99-40190

_____

PAUL M. DUTHU; LEE ROY DUTHU; REX DUTHU;
HERMAN DUTHU; RUBY M. DUTHU,

Plaintiffs-Appellants,

VERSUS

RUBEN PENA, ETC.; ET AL.,

Defendants,

RUBEN PENA, Individually and as Co-Executor and
Co-Trustee of The McGarr Estate and Trust, and as
Member of The Law Firm of Jones, Galligan, Key & Pena,
and as Member of The Law Firm of King & Pena,

Defendant-Cross Defendant-Appellee,

FOREST L. JONES, Individually and as Member of The Law Firm
of Jones, Galligan, Key & Pena; ROBERT L. GALLIGAN,
Individually and as Member of The Law Firm of Jones,
Galligan, Key & Pena; KING & PENA, A Law Firm; NEAL P. KING,
Individually and as Member of The Law Firm of King & Pena;
HARLINGEN NATIONAL BANK, In Its Corporate Capacity and
as Successor In Interest to Town and Country National Bank;
TERRY D. KEY; JONES, GALLIGAN, KEY & LOZANO, LLP,

Defendants-Appellees,

VERSUS

ROBERT E. PEDRAZA,

Defendant-Cross Claimant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Texas

(B-96-CV-191)

---

July 20, 2000

2

Before KING, Chief Judge, GARWOOD and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:[*]

This appeal presents the Court with the bitter remnants of several factually complex disputes relating to the distribution of the estate of Texas farmer Rex McGarr, who died more than fourteen years ago, on January 14, 1986. The case is before the Court on the basis of complete diversity and the matter is controlled by Texas law. The primary issue is whether the claims asserted herein are barred by the applicable state statutes of limitation.

Appellants Paul M, Duthu, Leroy Duthu,[2] Rex Duthu, Herman Duthu, and Ruby Duthu (hereinafter "the Duthus") are beneficiaries and contingent remainder men under McGarr's will. In the district court, the Duthus filed suit against: (1) attorney Ruben Pena and a host of lawyers and law firms associated with him (hereinafter "Pena" or "the Pena interests"), (2) Harlingen National Bank (hereinafter "the Bank"), as successor in interest to Town & Country National Bank, which was taken over by the RTC, and (3) Robert H. Pedraza (hereinafter "Pedraza"). Attorney Pena drafted the will and served as co-executor of McGarr's estate. Pedraza, a trusted McGarr employee of long service, was both a named

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[2]We note that this appellant's name is variously reported in the record as Lee Roy Duthu and Leroy Duthu. For the purposes of this opinion, we have adopted the spelling Leroy, as used by the appellant himself in record evidence.

3

beneficiary and served, together with Pena, as co-executor of the will. The Bank's predecessor in interest, Town & Country National Bank, extended certain loans secured by the estate's assets and then sued in Texas state court to collect on those loans, eventually capturing all of the estate's assets pursuant to a settlement agreement consummated in 1989. In December 1999, the district court entered separate orders granting summary judgment in favor of Pena and the Bank, finding, *inter alia* that the Duthus' claims were barred by both of the potentially applicable Texas statutes of limitation. The district court then severed the Duthu's remaining claims against Pedraza, which are still pending in the district court, and certified the orders granting summary judgment to Pena and the Bank for immediate appeal. The Duthus filed a timely notice appealing the district court's December 9 orders.

In the district court, appellant Robert Pedraza filed a cross-action against his fellow executor, attorney Pena. With respect to Pedraza's claims, the district court granted summary judgment in favor of Pena, holding that Pedraza's claims were likewise barred by the applicable statute of limitations. Pedraza filed a timely notice appealing the district court's order.

Viewed broadly, there are only two issues presented for review by this Court: (1) whether the district court properly granted summary judgment in favor of the defendants with respect to the Duthus' claims against Pena and the Bank, and (2) whether the

4

district court properly granted summary judgment with respect to Pedraza's claims against Pena. We review both of these issues de novo, and affirm.

## I.

The facts, in a light most favorable to the non-movants, are as follows. In August 1982, an elderly Rex McGarr executed a last will and testament. The will was drafted by attorney Ruben Pena, who was recommended by McGarr's long-time friend and farm employee, Robert Pedraza. The will provided, in relevant part, for cash distributions in the amount of $5,000 to certain named beneficiaries, including (1) McGarr's sister, Ruby Duthu; (2) his four nephews, Paul, Leroy, Herman, and Rex Duthu; and (3) Robert Pedraza. The will further provided for the conveyance of a 114 acre tract owned by McGarr to Pedraza in fee simple. Finally, the will provided that the residual estate, that portion remaining after the distribution of the cash bequests and the conveyance of the 114 acre tract, be placed into a testamentary trust. The testamentary trust, which was anticipated to include both real and personal property, was to be administered by Pena and Pedraza as trustees for the benefit of McGarr's sister, Ruby Pena, until her death or for a period of twenty years, with the beneficial interest to be divided among his nephews and Pedraza at the termination of the trust. In May 1982, about three months before Pena prepared McGarr's will, Pena prepared a report valuing McGarr's net worth,

5

and thus his estate, at approximately $1.8 million.

The same day the will was drafted, attorney Pena prepared a power of attorney giving Pedraza control over McGarr's affairs, which McGarr signed. The parties have not presented any issues relating to McGarr's competence to execute either the will or the power of attorney. Months later, in March 1984, Pena drafted and filed documents in a Cameron County, Texas probate court stating that McGarr was incompetent and requesting that Pedraza be made McGarr's guardian. Between the time that McGarr fell ill in 1982 and McGarr's death in 1986, Pedraza, in his role as McGarr's guardian, and as assisted and advised by Pena, borrowed more than one million dollars from several Texas banks, including Town & Country National Bank. Pedraza claims that the loans were secured for the purpose of continuing McGarr's farming operations. The Duthus claim the money was secured for Pedraza's own personal business ventures. Some of the earlier loans were secured by McGarr's property, but some were not. In addition, some of the loans were obtained without the statutorily required consent of the probate court administering the guardianship.

McGarr died in January 1986. In February 1986, Pena and Pedraza filed McGarr's will in a second Cameron County probate court, one different from the probate court supervising the McGarr guardianship. Pena and Pedraza were appointed independent co-executors of the estate and issued letters testamentary by the second probate court. At the time of McGarr's death, his estate

was heavily burdened with the debt accumulated by Pedraza as McGarr's guardian, including approximately $500,000 owed to Town & Country National Bank. Of the $500,000 debt owed to Town & Country National Bank, approximately $200,000 was not secured by any of McGarr's assets.

In this action, the Duthus claim they were never aware of any of these facts. They claim they did not know the value of McGarr's estate, did not know about the guardianship, and did not know any of the details about the timing or nature of the bank loans. To the contrary, the Duthus claim that Pena contacted them after McGarr's death, told them that he was their lawyer, and that McGarr's estate was burdened by debt that would obliterate their interest under the will. Pena further suggested that McGarr himself had approved the burdensome debt prior to his death, that their only hope of recovering anything under the will was to sign releases of their interest under the will, and that they might become liable for the debt itself if they failed to sign releases.

On May 15, 1986, Pedraza, assisted by Pena, formed a separate corporation for real estate development, the El Rancho Potrero Development Co., Inc. El Rancho Potrero was privately held by Pedraza and was not organized for the benefit of McGarr's estate. Later in May, Pena negotiated a settlement of the Duthus' interest in the estate with Ruby Duthu. Ruby Duthu and Rex Duthu agreed to release their interest in exchange for the amount of the cash bequest and signed releases. The remaining Duthus, however,

7

refused to sign and the deal fell through.

In June 1986, Pena, Pedraza, and the Town & Country National Bank negotiated a new loan that would permit payment of the cash bequests in full. Town & Country National Bank agreed to lend the estate an additional $40,000, to be used for payment of the cash bequests. Pedraza and Pena, as co-executors and trustees, agreed to execute a new note and deed of trust consolidating the $500,000 debt, and most importantly, securing the note with *all* of the estate's assets. The new note thus provided the bank with additional security in the form of previously unpledged assets and further converted approximately $200,000 of the debt from unsecured to secured status. As an added incentive to sign the consolidated note, Town & Country National Bank agreed to extend a separate bank loan to Pedraza's corporation El Rancho Potrero in the amount of $219,000. The proceeds of that loan were to be used to fund Pedraza's purchase of 62 acres from the estate. In late June 1986, Pena and Pedraza signed the note consolidating the various loans and securing the debt with the assets of the estate. The total amount of the consolidated and secured loan, however, was $625,000, rather than $540,000. The Duthus claim that the additional monies covered loans extended to Pedraza personally. The Duthus challenge the validity of the consolidated note on various grounds.

Throughout the balance of 1986, Pena tried to negotiate settlements of the Duthus' outstanding interest in the pledged

8

estate property. Ruby Duthu and Rex Duthu remained willing to settle for the negotiated amounts, but the remaining Duthus raised objections. Eventually, in January 1987, all of the Duthus signed releases. Ruby Duthu, Rex Duthu, and Herman Duthu signed releases in exchange for $5,000. Leroy Duthu and Paul Duthu signed releases in exchange for $7,000. In this action, Ruby Duthu, Herman Duthu and Rex Duthu claim that, notwithstanding the fact that they were paid in full under the express terms of the releases, Pena promised to try and get them an additional $2,000 so that they would ultimately receive the same amount as Leroy Duthu and Paul Duthu. The record contains documentation supporting this claim in the form of subsequent letters from Pena distributing an additional $500 to these parties, with the comment that Pena hopes to be able to obtain a remaining balance of $1,500 in the near future. The Duthus thus dispute the validity of the releases for a variety of reasons, including failure of promised consideration and fraudulent inducement based upon misrepresentations by Pena.

Nothing else happened until March 1988, when Pedraza defaulted on bank notes secured by the estate's assets. Town & Country National Bank tried to satisfy the note by selling the estate's assets. While in that process, Town & Country National Bank was taken over by the RTC. In August 1988, the notes were purchased from the RTC by Harlingen National Bank (referred to herein as "the Bank").

In 1988, the Bank sued Pena, Pedraza, Pedraza's wife Olivia,

El Rancho Potrero, McGarr's estate, and its title insurer for payment on the loans in a Texas state court of general jurisdiction. In December 1988, and while the state foreclosure suit was pending, Ruby Duthu, Rex Duthu, and Herman Duthu, contacted Mississippi attorney Don Barrett about their substantial rights under McGarr's will. The Duthus claim that they contacted Barrett purely and solely for the purpose of obtaining the $1,500 balance owed to them pursuant to Pena's promise to obtain $2,000 for each of them in addition to the amount recited as consideration under the terms of the releases executed by them. However, Barrett's initial investigatory letter to Pena includes the Duthus' allegation that they were "induced" to sign a waiver of their rights under the will. Moreover, the record reflects that attorney Barrett made a broader investigation, eventually corresponding with the Texas state probate court and obtaining copies of the public filings in the court's file.

In January 1989, Pena responded to Barrett's inquiry on behalf of Ruby Duthu, Rex Duthu, and Herman Duthu. Pena informed Barrett that McGarr's estate was heavily burdened by debt that exceeded the value of the estate. Pena forwarded Barrett copies of the releases in which the Duthus released their claims for $5,000 and explained that when the releases were signed, Pena was hopeful that successful negotiations would eventually permit Pedraza to take over the farm, which could have potentially preserved some value to the estate. Pena informed Barrett that that was no longer possible

10

because the debt owed to the Bank had been placed in litigation that would essentially bankrupt the estate, leaving no further assets to be distributed. Thus, by January 1989, at least three of the Duthus had actual or constructive notice through their counsel that the state court foreclosure action threatened to consume all of the estate's assets.

In July 1989, the Bank and the estate settled the state court foreclosure suit by assigning all of the estate's assets to the Bank, and the state court entered final judgment dismissing the action. In August 1989, the estate's assets were conveyed to the Bank pursuant to the settlement agreement. The Duthus challenge the validity of both the Bank's claims and the settlement agreement in the state court foreclosure suit on a variety of grounds.

The Duthus claim that they were not aware of either the $625,000 consolidation loan or the Bank's foreclosure suit and final judgment until 1996 when a third-party, Texas attorney Heriberto Medrano, conducted an independent investigation and then traveled to Mississippi to inform the Duthus of the relevant facts.[3]

Pedraza likewise claims that he has been the victim of the more sophisticated machinations of a purportedly self-dealing Pena in the administration of the guardianship and the estate. Notwithstanding his central role in most of the misconduct

---

[3]Attorney Medrano accepted the case himself and continues to represent the Duthus in this appeal.

identified by the Duthus, Pedraza claims that his only desire was to have the will enforced as written. Pedraza claims that he wrote Pena demand letters insisting that Pena establish the trust, pay the bequests, and convey the 114 acre tract to him, but that Pena took no action. Pedraza does not, however, explain how Pena would have been able to accomplish any of those things in light of the heavy debt accrued by Pedraza himself as guardian of McGarr's estate. Pedraza claims that he consolidated the loans and secured them with the estate's assets because Pena and a bank officer convinced him it was necessary to avoid unpleasant ramifications in a bank audit. Pedraza further claims that he objected to the formation of El Rancho Potrero, and that he did not understand why the estate's property was being conveyed to El Rancho Potrero. Pedraza also accuses Pena of a variety of other misconduct.

## II.

The instant suit began in October 1996, when the Duthus filed suit against Pena, Pedraza, and the Bank in federal district court. The Duthus' Complaint alleges: (1) that Pena and Pedraza breached certain fiduciary duties owed to the Duthus, committed fraud, and engaged in a civil conspiracy which damaged the Duthus; (2) that the Bank's conduct during the administration of the guardianship and estate amounted to civil conspiracy; and (3) that Pena and various law firms and attorneys associated with Pena committed legal malpractice.

12

In January 1997, Pena moved for dismissal or summary judgment. Pena argued that the Duthus' claims were barred by the applicable Texas statute of limitations. Alternatively, Pena argued that the claims should be dismissed because the Duthus formally released their interest in the estate in 1987, or because there was no privity between the Duthus and the defendant law firms.

In February 1997, the Bank moved for dismissal or summary judgment. The Bank argued that the Duthus' claims were barred by the applicable statute of limitations. Alternatively, the Bank argued that the Duthus' claims were barred by the D'Oench Duhme doctrine, or by the doctrines of compromise and settlement, accord and satisfaction, release, and res judicata.

In January 1998, Pedraza filed cross-claims against Pena, alleging legal malpractice and breach of fiduciary duty. In March 1998, the Bank filed conditional cross-claims against Pena seeking contribution and indemnity in the event that the Bank was held liable. Also in March 1998, Pena moved to dismiss Pedraza's cross-claim against Pena. As in his motion to dismiss the Duthus' claims, Pena argued that Pedraza's claims were time barred by the applicable statute of limitations.

On December 9, 1998, the district court entered separate orders granting Pena's motion for summary judgment with respect to the Duthus' claims, and granting the Bank's motion for summary judgment with respect to the Duthus' claims. The district court held that the undisputed facts established that the Duthus' claims

13

accrued, at the latest, in July 1989 when the state court entered final judgment in the Bank's foreclosure suit pursuant to the settlement agreement providing for the transfer of all of the estate's assets to the Bank. Given that the claims were not filed until more than seven years later, on October 28, 1996, the claims were time barred by both of the potentially applicable Texas limitation periods, which would be two years for those claims sounding in tort, *see* TEX. CIV. PRAC. & REM. CODE § 16.003, and four years for those claims sounding in contract, *see* TEX. CIV. PRAC. & REM. CODE § 16.004. The Duthus appeal the district court's grant of summary judgment with respect to their claims against Pena and the Bank.

On January 22, 1999, the district court entered an order granting Pena's motion for summary judgment as to Pedraza's cross-claims, holding that Pedraza's claims were also barred by limitations. In this order, the district court noted that Pedraza was aware of both the operative facts and any available legal theories against Pena no later that February 10, 1992, when an attorney retained by Pedraza wrote Pedraza a letter stating that the statue of limitations for a claim against Pena would expire the following month. Given that the cross-claims were not filed until almost 6 years later, on January 29, 1998, the claims were time barred by both of the potentially applicable Texas limitation statutes. Pedraza appeals the district court's January 22, 1999

14

order.

In addition to the proceedings in the district court, there have been significant developments in two related state court suits during the pendency of this appeal.[4]  In **Pedraza v. Pena**, No. 13-97-450-CV (Tex. App. - Corpus Christi, Sept. 16, 1999) (unpublished), Rogerio Pedraza, who is both Robert Pedraza's father and a beneficiary under the will, filed suit against Pena for, *inter alia,* failure to make the distribution required under the will.  In that case, which was filed in Hidalgo County, Texas, the state trial court granted Pena summary judgment, holding that Rogerio Pedraza's claims were barred by limitations.  The state court of appeals reversed, holding that Pena failed, in that case, to prove when Rogerio Pedraza's cause of action accrued as a matter of law.  The court of appeal's judgment in that case was informed only by a copy of McGarr's will and the date that the case was admitted to probate.

Three months later, the same court of appeals issued a decision in an adversarial action arising from the Cameron County, Texas probate court handling the McGarr estate.  *See **In re McGarr**,*

---

[4]There is also at least one other related third state court action pending.  While this suit was pending, Pena filed **Pena v. Jimenez**, No. 98-02-663-A in the 107th District Court of Cameron County, Texas against certain parties, including Pedraza and the Duthus.  In March 1998, the Duthus removed the action to federal court and requested consolidation with the instant action.  Pena objected to removal and moved to remand for lack of subject matter jurisdiction. The district court granted the motion, and **Pena v. Jimenez** forms no part of the current case.

10 S.W.3d 373 (Tex. App. - Corpus Christi 1999, no writ). *In re McGarr* was filed by Robert Pedraza and other non-Duthu beneficiaries under the will for an accounting and inventory of the estate. The Duthus later intervened, adding a claim for distribution under the will. *See id.* at 374 n.1. The trial court received extensive evidence before denying all requests, including evidence relating to the Duthus' and Pedraza's reliance upon counsel, the Duthus' releases, and the bank foreclosure action. *See id.* at 375-76. The court of appeals affirmed the probate court's denial of relief.

The rationale and authorities relied upon in this second, and more pertinent, state court appellate decision are ultimately controlling in our disposition of this appeal. The court of appeals began by noting that the issue of which statute of limitations applies to demands for an accounting, inventory and distribution, is unclear under Texas law. *See id.* at 376 (citing *Little v. Smith*, 943 S.W.2d 414, 416 (Tex. 1997)). The court of appeals then held that the plaintiffs' cause of action accrued and limitations began to run when the estate closed, which occurred in July 1989, when the state court handling the foreclosure suit entered final judgment giving the estate's assets to the Bank. *See id.* at 376. Thus, the plaintiffs' claims, filed more than four years later, were barred without regard to which statute applied. The court of appeals expressly distinguished its decision three

16

months earlier in *Pedraza v. Pena* on the basis that the record in that case was inadequate to decisively establish when the McGarr estate closed. *See id.* at 376 n.4.

The court of appeals then considered whether the plaintiffs suit could nonetheless be permitted to proceed by application of the Texas discovery rule. Where applicable, the discovery rule provides that a statutory limitation period may be tolled until the claimant either discovers, or through the exercise of reasonable diligence should have discovered, the facts establishing the elements of the cause of action. *See, e.g., Little v. Smith*, 943 S.W.2d 414, 418 (Tex. 1997); *Andress v. Condos*, 672 S.W.2d 627, 630 (Tex. App. - Fort Worth 1984, writ ref'd n.r.e.); *Eastman v. Biggers*, 434 S.W.2d 439 (Tex. App. - Dallas 1968, no writ). In *In re McGarr*, the Texas court of appeals concluded that the limitations period was not tolled because the plaintiffs' could be charged with constructive notice of the actual knowledge that could be obtained by an examination of public records, including the record of the guardianship, probate, and foreclosure proceedings. *See id.* at 377-78. The court of appeals further concluded that the fiduciary relationship between the Duthus and Pena, in his role as an attorney or executor, was insufficient to excuse their failure to exercise due diligence to discover the basis for their cause of action from available public records. *See id.* Thus, the court of appeals held that the facts of this case supported a holding that

17

the Duthus and Pedraza could have, but did not discover the facts made the basis of their multiple claims in July 1989, notwithstanding the fact that certain facts may have been concealed from them by someone purporting to act as a fiduciary on their behalf. The plaintiffs later filed a petition from this holding of the state court of appeals, which was denied. Keeping this important holding of the state court of appeals in mind, we proceed to a consideration of the parties' specific arguments in this appeal.

### III.

The Duthus argue that summary judgment in favor of Pena was inappropriate because they could not have known the facts giving rise to their claims until shortly before they filed suit in 1996, when attorney Medrano visited them in Mississippi. Texas law provides that a cause of action for an accounting or for distribution of an estate accrues and the limitation period begins to run when the independent executor files a final verified account of the estate or when all of the debts of the estate have been paid and any remaining estate property has been distributed. *See* TEX. PROBATE CODE § 151; *see also* **In re McGarr,** 10 S.W.3d at 376. In the context of this case, the second circumstance occurred, and most of the Duthus' claims would have normally accrued in July 1989, when the state court entered judgment in the foreclosure suit, or at the latest in August 1989, when the assets of the estate were

18

transferred to the Bank.  In addition, all of the operative conduct giving rise to the Duthus' remaining claims occurred before or shortly after August 1989.  Thus, there appears to be no dispute that the Duthus' remaining claims would likewise have accrued at that time.

The Duthus did not file suit until October 1996, more than seven years later.  Thus, assuming arguendo that the Duthus' claims are governed by the more generous four year state statute of limitations,[5] their claims are time barred if they accrued before October 1992.  The Duthus attempt to deal with the gap between the last relevant conduct in 1989 and the last possible trigger date in October 1992 by invoking the Texas version of the discovery rule.

Texas courts have applied the discovery rule in "two types of cases: fraud or fraudulent concealment, and where the nature of the

---

[5]Precisely which statute of limitations applies to which of the appellants' multiple claims is actually a fairly complex issue. Certainly, some of the Duthus' and Pedraza's claims would be controlled by the shorter two year period of limitations, *see* **Kansa Reinsurance Co., Ltd.**, 20 F.3d 1362, 1374 (5th Cir. 1994) (applying Texas' two year statute of limitation to breach of fiduciary duty claims); **Willis v. Maverick**, 760 S.W.2d 642, 643 (Tex. 1988) ("A cause of action for legal malpractice is in the nature of a tort and is thus governed by the two-year limitations statutes."); **Chandler v. Chandler**, 991 S.W.2d 367, 394 (Tex. App.–El Paso, Texas, writ denied), *cert. denied*, 120 S. Ct. 2033 (2000) ("The statute of limitations for civil conspiracy is two years."), while others may be controlled by the four year period of limitations, s*ee* **Kansa Reinsurance Co.,** 20 F.3d at 1369 (noting that Texas law provides a four year limitation period for fraud claims).  We need not definitively resolve the issue in order to dispose of this case, because we conclude that the appellants' claims are barred without regard to which of the two limitations periods apply.

19

injury incurred is inherently undiscoverable, but may be objectively verified." *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 436 (Tex. App. - Houston [1st Dist.] 2000, no writ). The Duthus maintain that Pena's and the Bank's wrongful concealment of the relevant facts prevented them from obtaining notice of their claims any earlier than 1996. This is the equivalent of a fraudulent concealment claim. Therefore, the discovery rule is at least potentially applicable to toll the relevant limitation period in this case. *See, e.g., Andress*, 672 S.W.2d at 629-30; *Eastman*, 434 S.W.2d at 441.

What remains for determination is whether Pena has established that the Duthus either discovered or should have, through the exercise of reasonable diligence, discovered the facts made the basis of their claims. We hold that Pena has met that burden as a matter of law. All of the operative facts forming the basis of the Duthus' claims occurred before the end of 1989. The summary judgment record conclusively establishes that there were, at that time, publicly available records placing the Duthus on constructive notice of the factual basis for their claims. *See In re McGarr*, 10 S.W.3d at 377; *see also Little,* 943 S.W.2d at 421 ("Constructive notice is usually applied when a person knows where to find the relevant information but failed to seek it out."); *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) ("When evidence of fraud may be disclosed by examination of public records this court has held

that limitations will begin to run from the time the fraud could have been discovered by the exercise of ordinary diligence."; *id.* ("Persons interested in an estate admitted to probate are charged with notice of the contents of the probate records."); **Andress**, 672 S.W.2d at 630-31 (affirming summary judgment in favor of defendants on limitation grounds and holding that plaintiffs' failure to search publicly available records supported determination that plaintiffs' failed to exercise due diligence in the discovery of their claim as a matter of law); **Eastman**, 434 S.W.2d at 443 (same). Indeed, the Duthus do not identify one fact or circumstance which came into existence or occurred between 1989 and 1996 that made their previously undiscoverable claim or injury discoverable in 1996. To the contrary, the only thing that happened in that time period is that attorney Medrano, a stranger to the suit and all dealings, decided for some undisclosed reason to look into the matter. The clear implication is that the Duthus could have, with an exercise of due diligence, done so themselves much earlier. *See, e.g.*, **Andress**, 672 S.W.2d 627; **Eastman**, 434 S.W.2d 439.

The Duthus assert that they are relatively unsophisticated people who cannot fairly be charged with constructive notice of the content of the state court files in the guardianship, probate, and foreclosure proceeding, because they justifiably relied upon various misrepresentations made by Pena as their attorney and fiduciary with respect to their interests under the estate.

21

We disagree with both the factual premise and the legal conclusion underlying the Duthus' argument. At least three of the Duthus (Ruby, Rex, and Herman) obtained notice from Pena through their counsel Barrett that the assets of the estate had been placed in litigation with a lien holder, and that the litigation was expected to bankrupt the estate. Had the Duthus investigated the status of that pending litigation, they would have discovered virtually all of the facts that they claim were concealed from them by Pena, including the existence of the guardianship proceeding and the rapid accumulation of debt by Pedraza on McGarr's behalf, from the terms of the note at issue in the foreclosure proceeding.

In addition, the record conclusively establishes that four of the five Duthus (Ruby, Rex, Herman, and Paul) obtained legal counsel with respect to the effect of the signed releases. Record evidence in the form of correspondence from Ruby Duthu states that Leroy also sought and received legal counsel while the estate was being administered. Pena may have been proceeding in the technical role of fiduciary, but the essentially adversarial and conflict-ridden nature of the relationship between the Duthus and Pena is obvious in the record. This is, therefore, not the type of fiduciary relationship were the Duthus were blindly following the lead of a trusted fiduciary, nor where they were consenting without question to the fiduciary's handling of their own affairs. Even if the Duthus are themselves rather unsophisticated, we have no

22

trouble under the specific circumstances of this case, concluding that the relevant facts and circumstances placed the Duthus on sufficient notice that they both could have, and should have followed up upon Pena's 1989 disclosure of the pending foreclosure suit by reviewing publicly available records in lawsuits involving the estate.  Had they done so, they would have discovered the facts made the basis of their claims against Pena from the face of those records.

We likewise reject the Duthus' suggestion that Pena's alleged concealment of the guardianship or the nature and origin of the debt burdening the estate trumps the requirement that they exercise due diligence to discover their claims.  Texas law is clear; while fraudulent concealment by a fiduciary may be a factor in the determination of whether a plaintiff exercised due diligence, such a factor neither supplants nor excuses the requirement for the exercise of due diligence on the part of the prospective plaintiff. *See*, *e.g.*, ***Colonial Penn Ins. Co. v. Market Planners Ins. Agency,*** 1 F.3d 374, 377 (5th Cir. 1993) ("Texas cases make clear that fraudulent concealment does not trump the discovery rule, but is merely a factor to consider in determining when a plaintiff in a fiduciary relationship knew or should have known of the facts giving rise to its cause of action."); ***Courseview, Inc. v. Phillips Petroleum Co.***, 312 S.W.2d 197, 205 (Tex. 1957) ("a failure to exercise reasonable diligence is not excused by mere confidence

in the honesty and integrity of the other party"); *Andress*, 672 S.W.2d at 630 ("The fact that parties are fiduciaries does not, however, change the rule that diligence is required in discovering the fraud. Rather, the fiduciary relationship is merely one of the circumstances to be considered in determining whether fraud might have been discovered by the exercise of reasonable diligence."); *Eastman*, 434 S.W.2d at 442 ("the fact that a fiduciary relation exists does not justify a party in negligenting every precaution until something occurs to arose his suspicions.").

Pena has established that the Duthus' claim accrued more than four years before they filed suit in 1996. For that reason, the Duthus' claims against Pena were untimely filed and we therefore affirm the district court's grant of summary judgment in favor of Pena as to those claims.

## IV.

The same reasoning applies in large part to the Duthus' claims against the Bank. We need pause only briefly to consider the Duthus' primary arguments. The Duthus argue that summary judgment was inappropriate with respect to their claims against the Bank for two reasons. The Duthus first claim that they were denied the opportunity to engage in the discovery required to fully respond to the Bank's motion. The Duthus preserved error on this point by moving for a continuance for such discovery pursuant to Federal Rule of Civil Procedure 56(f), which was denied. The Duthus argue

24

that, given the opportunity, they would have explored what the Bank knew and what documents were in its files when the Bank filed the foreclosure suit against the estate. We note that virtually all of the items identified for further discovery related to the merits of the Duthus' claim, i.e. the Bank's conduct during the course of McGarr's guardianship, Pena and Pedraza's administration of McGarr's will, and the Bank's foreclosure suit. There is no indication in the record that any of the discovery would have been responsive to or provided any means for avoiding the Bank's limitation defense, which was the basis for the district court's decision. We conclude, therefore, that the district court's denial of the Duthus' rule 56(f) motion was not an abuse of discretion.

The Duthus next claim that there are genuine issues of material fact for the jury with respect to the Bank's limitation defense. The Duthus' arguments, however, are tied primarily to the merits of their civil conspiracy claims against the Bank rather than the Bank's limitations defense. The Bank, on the other hand, correctly responds that there was no fraudulent concealment on its part, that it dealt openly, in conformity with Texas law, and as a matter of public record with the estate, and that the Duthus' claims were inherently discoverable from the pertinent public records no later than late 1989. There is, therefore, no justification for applying the discovery rule to extend the limitations period with respect to the Duthus' claims against the Bank, and we therefore affirm the district court's decision

25

granting summary judgment in favor of the Bank as to those claims.

**V.**

What remains for review is the district court's decision granting summary judgment in favor of Pena with respect to appellant Pedraza's claims for breach of fiduciary duty, self-dealing, fraudulent misrepresentation, and conversion. Pedraza maintains that the district court's decision is flawed by two errors. First, Pedraza argues that the district court's order granting summary judgment is premised upon a significant factual error. Pedraza notes the district court's observation that:

> There is no question but that PEDRAZA through his attorney was aware of sufficient facts to commence the running of the statute of limitations by early 1991 and was advised by letter of February 10, 1992 that the "statute of limitations against Pena [and Sanchez] expires on March 19, 1992, two years after you fired them."

The letter quoted by the district court was written by Texas attorney Elihu Dodier, who agreed to try and find counsel for Pedraza's potential claims against Pena, another attorney named Sanchez, and the Bank. Pedraza claims that he only asked Dodier to investigate suit against the Bank and that he did not have any facts supporting suit against Pena until attorney Medrano conducted his investigation in 1996. Pedraza's argument in this regard is without any merit. Both Dodier's February 10, 1992 letter, and a previous communication from another prominent attorney, John O'Quinn, demonstrate that Pena's conduct was likewise at issue.

26

Pedraza next invokes his ignorance of the law, and his lack of sophistication. While sympathetic, Pedraza does not cite any authority that would permit this Court to avoid the quoted correspondence, or the obvious fact that counsel secured by Pedraza made him clearly aware of facts that should have given rise, at the very least, to more investigation.

We are also influenced by the fact that Pedraza played an active role in every aspect of the conduct he now identifies as objectionable. Pedraza was the guardian appointed by one of the probate courts. Pedraza signed the notes that burdened the estate. Pedraza signed documents forming El Rancho Potrero. Pedraza signed the consolidated note pledging the estate's assets and converting a partially unsecured loan to a completely secured loan backed by estate assets worth more than the actual debt. Further, Pedraza was party to the "self-dealing" sale of real estate from McGarr's estate to Pedraza's own corporation. Pedraza was party to the foreclosure action by the bank. After the Bank foreclosed, Pedraza retained a lawyer to shop around a lender liability claim against the Bank. In March 1990, Pedraza fired Pena and apparently began trying to secure counsel for claims against Pena as well. In early 1991, Pedraza received attorney O'Quinn's analysis of his case, which listed Pena as a target defendant. In February 1992, Pedraza received actual notice from attorney Dodier that the statute of limitations against Pena was about to expire. Nonetheless, Pedraza did not file suit until January 1998, almost six years after that

27

date.

Assuming that some or all of Pedraza's claims are controlled by the more liberal four year statute of limitations, his cause of action would be barred unless it accrued some time after January 1994. We agree with the district court that the record is sufficient to establish as a matter of law that Pedraza was actually aware of the facts made the basis of his claim well in advance of that date. We therefore affirm the district court's order granting Pena's motion for summary judgment with respect to Pedraza's claims against him.

## CONCLUSION

The summary judgment record in this case conclusively establishes as a matter of law that the appellants' claims accrued and limitations began to run more than four years before they filed suit. For that reason, the district court is AFFIRMED.